(50 South. 785.)

No. 17,502.

## FURLOW v. BENOIT.

(Nov. 15, 1909. Rehearing Denied Dec. 13, 1909.)

BROKERS (§ 65*)—SALE OF REAL ESTATE—COMPENSATION—FRAUD.

Services were rendered by plaintiff to defendant. The former was to find a purchaser for the latter.

The purchaser was found and the sale made.

The amount stipulated for the services was due.

The plaintiff did not seek his own interest to the extent of forfeiting right to compensation.

The fee was contingent. The sale was consented to by defendant readily without inquiry.

There had been no agreement entered into between plaintiff and the one who bought the property, only general conversation which did not result in any agreement, prior to the sale.

Under the circumstances, there was no fraudulent concealment of facts.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 48–50; Dec. Dig. § 65.*]

(Syllabus by the Court.)

Appeal from Sixth Judicial District Court, Parish of Ouachita; J. P. Madison, Judge.

Action by Thomas E. Furlow against Henry T. Benoit. Judgment for plaintiff, and defendant appeals. Affirmed.

John M. Munholland, for appellant. Ben C. Dawkins and Lamkin & Millsaps, for appellee.

BREAUX, C. J. This suit was brought by plaintiff against defendant for $4,000 and legal interest, for asserted services rendered in finding a purchaser for a mill plant owned by defendant.

By the first agreement between the parties, dated August, 1908, plaintiff was to receive for his services 3 per cent. of the first $20,000 and all of the purchase price over and above that amount.

Plaintiff interested others in the attempt to sell the property on commission contingent upon the price over and above the amount before stated.

This, after a short time, was not satisfactory to him. He called upon defendant and requested him to enter into another contract of employment which would enable him to recover an amount more in accordance, as he stated, in substance, with the value of the services to be rendered.

This request resulted in a modification of the original contract on the 29th day of September, 1908, whereby for procuring a buyer, plaintiff was to receive for his services all over and above the price of $16,000.

The property was sold for $20,000.

The defendant declines to pay on the grounds: That plaintiff knowingly concealed information from him and kept him in ignorance of his negotiations and improperly induced him to enter into another contract than the one of August, 1908; that he signed the second contract, of September, 1908 (as modification of the first), in error.

It appears that plaintiff on the same day that the last contract in date was signed, after it had been signed, met E. C. Lamm, the buyer, and after preliminary discussion, in which a larger amount was asked for the property, finally closed for $20,000.

The deed of sale was prepared the next day and signed by defendant and the buyer, Lamm.

Going back prior to the sale, the defendant charged that, in effecting the sale, plaintiff, without his authority, bound respondent to guarantee that there were 5,000,000 feet of timber on the land, and further bound him to deposit the last maturing note of the purchase price for $4,000 as security for the guaranty, and defendant urged that before the timber on the land is used it cannot be known how much there is or what amount will have to be deducted from the purchase price in making good the guaranty.

The facts are that Corbitt & Co. of Denver, Ill., real estate agents, acting for plaintiff at his instance, advised E. C. Lamm, the one who afterward bought the property, to come

to Louisiana and look at the plant, and said to him that plaintiff, acting for the defendant owner, would meet him at Monroe, La., on the day following.

Lamm came to Louisiana, met plaintiff, and together they went to Simsborough, La., and looked over the sawmill and planing mill of the defendant. On the Monday following, they looked over the timber, and afterward the question of price arose.

In the meantime the defendant had not been overlooked by plaintiff. He had been requested by him to be present, and meet the one who had some thought of buying. The defendant declined, and stated that his business at home did not permit him to leave, and meet Lamm at the site of his lumber plant at some distance.

Plaintiff put up the price of the plant and timber in conversing with Lamm at $28,000. This was met by the future vendee, Lamm, with the usual answer, "The price is too high." He said that he thought $20,000 was enough.

There is a difference between these two as witnesses.

Plaintiff said that Lamm stated that the property was not worth more than $20,000, "if it was worth that," while Lamm's statement as a witness omits the words, and speaks of $20,000 only, thereby creating the impression that he thought it was fully worth that sum.

The matter was left open when they agreed to leave Simsborough and return to Monroe to resume negotiations. No definite offer was made by the vendee until Tuesday, the 29th of the month.

Plaintiff testified that he had interested others in the endeavor to find a purchaser to whom he had promised a commission. He added that he feels bound to share whatever may be recovered in this suit with the other two agents. He and the agents (three) were to receive one-third each.

After the property had been looked over, as before stated, the future vendee said that he was disappointed in the timber, or something to that effect, although highly pleased with the sawmill and planing mill.

The statement of plaintiff, as a witness, is that defendant had informed him that he had from 5,000,000 to 6,000,000 feet of pine stumpage, and from 1,000,000 to 1,500,000 feet of oak and other hard wood trees. Defendant denied this part of the testimony. He is not as positive in his denial as he is in regard to other testimony of plaintiff.

Plaintiff and defendant disagree very much in regard to the conversation held between the two the day before the sale.

The account of plaintiff is that he told defendant that the prospective buyer was pleased with the plant, but not with the timber; while the defendant's statement is that he was imposed upon because plaintiff withheld information which he should have imparted to him.

It remains as a fact that, on the day before mentioned, plaintiff spoke to the defendant of his commission, and said to him that he would have to divide, and that the condition of the agreement under which he was acting with the defendant was such that he would not recover anything for his services if the place was not sold for over $20,000, and that he preferred to seek another purchaser willing to pay a larger price. This was declined by defendant, who said that he would have nothing to do with plaintiff if the sale under discussion was not effected.

The plaintiff admitted that he did not report to defendant all the conversation he had with Lamm, the prospective buyer, about the amount discussed between him and Lamm; but he emphatically denied that any price was agreed upon, or that he had any reason to assume with any degree of certainty that the buyer would pay as much as the sum last above mentioned.

During the interview held the day before the sale, the defendant agreed to sell to Lamm for a minimum price of $16,000. It was stipulated that plaintiff would have a right to all over and above that amount.

There was considerable disagreement between plaintiff and defendant about the guaranty clause in the deed in regard to the number of feet of timber that were to be transferred with the land.

The buyer insisted and said he would not think of buying unless the number of feet was guaranteed, and it is evident that there would have been no sale if the defendant had not consented to the guaranty clause regarding the number of feet of timber.

In accordance with the request of defendant, plaintiff, as notary public, prepared the deed of sale of the property for $20,000 and in the deed inserted the guaranty clause of the number of feet of timber.

The parties appeared before the notary and signed this deed without the least objection; but shortly after having signed the defendant became dissatisfied. He evidently regretted that he had made the sale. He sought to cancel the deed in his possession, which had not yet been signed by the vendee. He was called upon a few days afterward for this deed. Upon reconsideration he signed in accordance with the original agreement, and the vendee also signed.

In his disgruntled condition he drew up a deed to be signed by the plaintiff, in which he sought to bind him to stand in his place and guarantee the number of feet of timber sold. His position was that the guaranty clause had been inserted in the deed on account of plaintiff, and that it was really an act for which he (plaintiff) was responsible, and in consequence he should sign the deed which he (defendant) offered to him to be signed.

This deed recited that plaintiff had given the guaranty about the 5,000,000 feet of timber without the consent of defendant; that

he obligated the defendant to deposit as security for the guaranty the note of $4,000, representing the purchase price.

Defendant declared in this deed that he had transferred to plaintiff this note for $4,000 which the plaintiff received in full satisfaction of the commission of that amount stipulated to be paid by him to plaintiff for effecting the sale; and he further stated in the deed that it was to be a receipt for the commission to be paid by him, and that it would serve to enable the plaintiff to make good his guaranty. He further stated that the note was to continue on deposit as originally agreed upon.

The plaintiff refused to sign this agreement.

A copy of the agreement was offered in evidence and admitted without objection. It proves that after the sale the defendant admitted his indebtedness.

Having been admitted without objection, and both parties referring to it as a document in evidence and relying upon it, it has not the effect of a compromise. It is an admission of disputed facts.

From the foregoing it is manifest that defendant seeks to have it offered that, if plaintiff had correctly stated all the details of the conversation he had with the one who afterward became the vendee, he (defendant) would not have signed the deed of sale.

Defendant was dilatory in arriving at the conclusion just above stated. He allowed time to pass without formal protest or objection.

The gravamen of defendant's complaint is stated:

"He said to me that he could not sell it for the price that I put on it, and I had put the price of $20,000 on it; his commission to be 3 per cent. As I have put that price on it, and he said he could not sell for the price I put on it, it looks as he intended me to get the impression that he would not sell for $20,000."

The foregoing, taken with the evidence in the case, does not sustain defendant's con-

tention of great wrong perpetrated on him. We infer that no sale would have been effected at all if defendant had not consented to the guaranty clause, so that plaintiff was right in the surmise that there would be no sale to the present vendee, unless the defendant changed his mind.

The principle of agency is invoked by the defendant, and the duty due by an agent to his principle to report every fact of any moment to his principal.

This is true; but we do not understand that in this instance the relations between the two were such that the plaintiff was obliged to state all the particulars of a conversation that he had with the one who became the buyer. Plaintiff was not defendant's agent except to find a purchaser. He was active in his endeavor in this respect. He interested others and proposed to them to divide with them the amount he would receive for services in effecting the sale.

A day or two before the sale, he realized that, if the property sold for the amount fixed in the first contract, his earnings in the deed would be small. He informed the defendant of that fact. Before informing him, he did not withhold the name of the buyer with whom he was negotiating. He discussed the question of price. Not only that, but he called on the defendant when this buyer came to Louisiana to look at the property to meet the buyer. He signed the deed of sale voluntarily.

If the defendant did not meet this buyer it is no fault of plaintiff.

We have not found that the plaintiff ever made misstatements to the defendant, or assumed to act fraudulently in order to carry his point. True, he did not communicate to the defendant the details of the conversation with Lamm, the vendee; nor did he import to him his impression as to whether or not this future buyer in question would buy. But no particular price had been mentioned with a view of closing the sale. There was no agreement at all made. Not the least had been said with a view of finally agreeing upon a price. There was no absolute certainty that the purchaser in question would buy. On the contrary, it was well understood that he would not buy unless the defendant guaranteed the number of feet of timber on the land. There had been nothing completed when they left Simsborough to meet in Monroe, and before they met in Monroe again the plaintiff called on the defendant and stated to him that he was not pleased with the amount he was to receive if the transaction was completed, and it was then that the defendant deliberately proposed to the plaintiff to accept the net sum of $16,000; a proposition which he confirmed by signing the deed of sale, and by calling on the plaintiff to sign an instrument of writing after the deed of sale had been signed, in which he again acknowledged his indebtedness to plaintiff, as before noted.

He would have these two instruments considered null and of no effect as between him and the plaintiff only because plaintiff neglected or did not choose to say to him that Lamm had spoken of $20,000 as a possible value, this according to Lamm, or $20,000 "even if that much," according to Furlow, the plaintiff.

Were we to give effect to defendant's theory of the case, it would give too much effect to the unimportant information to which the defendant would give so much importance.

Defendant did not seek further information than he received.

He should have declined to grant the request to increase the commission. He had it in his power to refuse to make any change.

Plaintiff's right to compensation was contingent upon his success. If the amount had been a flat rate of 3 per cent., it might have been different.

A positive amount creates a greater right in the owner to exact information. Where the fee is contingent, it is not passing strange

that the agent to sell does not tell all, particularly if he is not questioned.

A contingent commission may be very convenient. It is not always the safest or the best way of doing business.

The defendant is the appellant; the plaintiff, the appellee. Both complain of the judgment; the former in the appeal, and the latter by motion here to amend.

We think the judgment does justice between the parties. Under its terms defendant receives $16,000. The remainder remains as a guaranty of the shortage in measurement of timber and for the commission due.

The judgment is affirmed.